# Continental Baking Powder Co. v. Stoner.

## Assumpsit.

(Decided July 6, 1910. 53 South. 303.)

1. *Master and Servant; Employment; Discharge; Instructions.*— Where plaintiff had been employed by the defendant corporation as a demonstrator at $34.00, and was requested by the state manager to act as salesman to merchant customers which he declined to do unless his salary was increased to $75 per month, and on doing so, the state manager agreed to recommend the increase to his superior and when discussing the business with the superior, the state manager recommended the increase, and his superior nodded his head, whereupon the state manager wired the salesman that the increase was agreed to, and plaintiff took up the work as salesman, and on the succeeding day the general manager informed the state manager that he had misconceived his instructions and directed him to inform the plaintiff, but which information plaintiff claimed he had never received, a charge asserting that if the defendant through its general manager had knowledge of the state manager's sending the telegram engaging plaintiff's

service for defendant at $75 per month, it was defendant's duty
to notify plaintiff of its unwillingness to pay that amount, was erro-
neous.

2, *Corporations; Employment of Agent; Estoppel.*—Where the
state manager had no authority to employ plaintiff at an increased
salary, but recommended such increase to defendant's general man-
ager, and believing that the recommendation had been adopted,
notified plaintiff thereof, but the general manager never had any
dealing with plaintiff and did nothing to warrant plaintiff in the
belief that the state manager had special authority to increase
his salary, defendant was not estopped by any conduct of its
manager to deny that it agreed to any such increase.

APPEAL from Madison Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by A. L. Stoner against the Continental Bak-
ing Powder Company, to recover a difference in salary.
Judgment for plaintiff and defendant appeals. Revers-
ed and remanded.

COOPER & COOPER, for appellant. Counsel discuss
the facts in the case and conclude that the court erred
in giving charge 1 requested by appellee, and in refus-
ing charges 2 and 3 requested by appellant, but cite
no authority in support thereof.

LANIER & PRIDE, for appellee. Under the circum-
stances shown in this case the defendant is estopped to
take refuge in the defense sought to be interposed here.
—*Syndicate I. Co. v. Catchings,* 16 So. 46; *Gibson v.
Snow Hdw. Co.,* 10 So. 304; *Louisville C. Co. v. Stokes,*
78 Ala. 372. The court properly gave charge 1.—*M. &
M. R. Co. v. Jay,* 65 Ala. 113 and authorities supra.

SAYRE, J.—Assignments of error in this case are
based upon the giving and refusal of certain special in-
structions to the jury. For a proper understanding of
them it may be stated that Cummins was defendant's
general manager with headquarters at Nashville, Tenn.
McCary was its general manager for Alabama, directing

subordinate agents, but himself under the direction of Cummins. Plaintiff was employed in Alabama as a demonstrator at a salary of $34 a month; that is, he advertised defendant's goods, a baking powder, and sold them directly to consumers. McCary had employed plaintiff in the beginning. Plaintiff and McCary discussed plaintiff's promotion to the place of salesman to merchant customers. Plaintiff said he would not take a place as salesman unless his salary were increased to $75 a month. It was agreed that, when McCary went to Nashville, he would recommend plaintiff's promotion with an increase of salary to plaintiff's figures. McCary went to Nashville, whence he sent a telegram giving plaintiff to understand that his promotion and increase of salary had been agreed upon by the defendant, and telling him to "go after 'em." On receipt of the telegram plaintiff took up the work of salesman—as we infer—and continued to prosecute it for two months, at the end of which time plaintiff was discharged on account of a difference which had arisen about his salary. Defendant was willing and offered to pay the balance due on his salary on the old basis. Plaintiff demanded the increased rate. Out of the difference this suit arose. McCary narrates what passed between him and Cummins, on the occasion of their conference at Nashville, as follows: "When I told him of the work of the demonstrators he was sitting at his desk engaged in his general work. I told him that I desired to recommend A. L. Stoner for advancement from demonstrator to salesman, and that I would like for the company to pay him $75 a month. In this conversation nothing was said about compensation by Mr. Cummins, but he nodded his head—when I mentioned paying Stoner $75 and expenses—which I understood was an affirmative reply." Thereupon McCary sent the tele-

[Continental Baking Powder Co. v. Stoner.]

gram. Subsequently, and on the same day, McCary mentioned the sending of the telegram to Cummins, who immediately informed him that he had been misunderstood, and directed McCary to so notify plaintiff at once. On the same or the next day McCary wrote to plaintiff, explaining the mistake. There was evidence pointing to plaintiff's receipt of the letter by due course of mail; but this he denied.

In this state of the evidence it was the duty of the court to treat this controverted fact as one for determination by the jury, and could deal with it as settled by the great weight of the evidence only when and in the event its action to that end was invoked by a motion to set aside the verdict. The charge given at the request of the plaintiff asserted the proposition that, if the defendant through its general manager had knowledge of McCary sending plaintiff a telegram engaging his services for defendant at the rate of $75 a month, it was the duty of defendant to inform plaintiff of its unwillingness to pay that amount. When considered in connection with the undisputed facts, as it must be, the effect of this charge was to establish a contract between the parties by which plaintiff was to receive $75 a month and to continue that contract in force until knowledge of defendant's repudiation was actually communicated to plaintiff. Appellee (plaintiff below) refers to *Louisville Coffin Co. v. Stokes,* 78 Ala. 372, and a number of cases in the same line, as going to show that McCary had apparent authority to employ agents, and defendant could not avoid liability because of secret limitations affecting his power to employ plaintiff. But those authorities are without influence upon the case for the reason that it distinctly and without contradiction appears that McCary's proposed advancement of plaintiff with an increase of salary was subject

to approval by Cummins, as plaintiff well knew. But that contention is wide of any mark set up by the charge, for the charge clearly proceeds upon the idea that defendant is to be bound, not by any authoritative act of McCary, but by some sort of estoppel. The argument for estoppel, following the language of the Supreme Court of the United States in *Bronson v. Chappell,* 12 Wall. 681, 20 L. Ed. 436 (where the parties dealt with each other directly), is that, if Cummins, who had authority to bind defendant, justified McCary's belief that he had authority to do what was done, defendant cannot be heard to say that McCary had no authority, or that it did not reach so far, or that plaintiff acted upon a mistaken conclusion. Appellee's conclusion is that defendant was estopped to say that McCary had no authority, and that, if a loss must be borne the author of the error ought to bear it. It is the general rule of law that no one can become the agent of another except by the will of the principal. That will may be expressed in a variety of ways. "The general rule," says Judge Thompson, "undoubtedly is that the liability of a principal for the contracts of his agent is predicated either upon a previous authorization or a subsequent ratification. But there are cases where a person will become liable for the assumed act of another as his agent on the principle of estoppel by suffering that other to represent himself as his agent with power to make the particular contract."—*Fanning v. Cobb,* 20 Mo. App. 577; Mechem on Agency, § 83 et seq. But the principle of estoppel is not available to appellee under the facts. McCary was responsible for plaintiff's mistaken conclusion. Cummins had no dealing with plaintiff, did nothing to warrant plaintiff's belief that McCary had a special authority to employ him as a salesman at an increased salary. Plaintiff relied upon

McCary, not Cummins. He knew that whatever authority McCary had in the premises was a special authority delegated for the particular occasion. He relied upon no appearance of general authority. He was therefore bound to know the exact extent of McCary's authority, as McCary was bound to know it. McCary could no more estop defendant by his mistake than he could bind it by his deliberate tortious assumption of authority. In either event his authority would have been assumed against the will of his principal.

Something is said of ratification. But the ratification intended is that which is supposed to have arisen from the asserted failure of defendant's notification of McCary's mistake to reach plaintiff and plaintiff's subsequent continuance in the service of defendant. Plaintiff continued in the service of defendant for two months longer, but there was nothing to carry home to Cummins knowledge of the fact that plaintiff was rendering services under the belief that he was to receive an increased salary. On the contrary, Cummins at the end of the first month sent a check for plaintiff's salary on the old basis, and the check was accepted by plaintiff. He explains his acceptance by saying that McCary stated upon the matter being brought to his attention that there was some mistake, and that he would see the company and make it all right. This McCary denied. But, assuming the fact as plaintiff states it to have been, he is still seeking to conclude defendant by the unauthorized act of an agent whose lack of authority he must be held to have known. . The charge was not in harmony with this view of the case and should have been refused.

Of the charges refused to defendant little need be said. If the jury should find that McCary understood Cummins according to the intention of the latter at the

time—the possibility of which conclusion may be conceded—then a contract was established between the parties by the telegram and plaintiff's action upon it, if plaintiff did act upon it, which continued to subsist until it was lawfully determined by the defendant. In that event, there could be no question of ratification nor any of contract by estoppel.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.